UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| EUGENE RONALD HOLLEY, SR., <br><br> Plaintiff, <br><br> v. <br><br> DR. KENNETH R. SEBBAY, *et al.*, <br><br> Defendants. | Case No. C07-5283 BHS/KLS <br><br> REPORT AND RECOMMENDATION <br><br> **NOTED FOR:** <br> **May 2, 2008** |

Before the Court is the motion for summary judgment of Defendant Dr. Kenneth Sebby seeking summary dismissal of Plaintiff's claims. (Dkt. # 21). In support of his motion, Defendant Sebby submits his declaration and the Declarations of Devon L. Schrum and Kiera M. Silva. (Dkt. # 22, 23 and 24, with attachments). Defendant Washington State Department of Corrections (DOC) joins in the arguments made in Defendant Sebby's motions and also requests summary judgment in its favor. (Dkt. # 25). Defendants argue that Plaintiff's claims must be dismissed because he has failed to exhaust the administrative grievance process prior to filing this lawsuit and because he cannot establish violation of his constitutional rights under 42 U.S.C. § 1983.

Plaintiff has not responded to Defendants' motions, although he had ample time to file a response. Under Local Rule 7 (b)(2) failure to file papers in opposition to a motion may be deemed by the court as an admission the motion has merit.

REPORT AND RECOMMENDATION - 1

After careful review of Defendants motions, supporting evidence, the balance of the record, and viewing the facts in the light most favorable to the Plaintiff, the undersigned recommends that Defendants are entitled to summary dismissal of the claims against them.

## I. UNDISPUTED FACTS

The following facts are not in dispute:

**A.    Plaintiff's Injury**

On or about February 17, 2007 Plaintiff ruptured his Achilles tendon while playing basketball in the prison yard at the Washington Corrections Center (WCC) in Shelton, Washington. Another inmate stepped or fell on the back of Plaintiff's leg. (Dkt. # 24, Exh. 1, Holley Dep. 16:6-11; Dkt. # 22 at ¶ 6). Plaintiff states that the injury was an accident and that it was no fault of DOC or prison staff. *Id*.

**B.    Dr. Sebby's Treatment of Plaintiff**

In addition to his private practice, Dr. Kenneth Sebby was under contract with the State of Washington Department of Corrections to provide orthopedic consulting services to inmates at the WCC. (Dkt. # 22 at ¶ 5). He would consult with inmate patients once a week at the WCC infirmary, normally on Tuesdays. Dr. Sebby was a consultant for the DOC at WCC for approximately five (5) years. *Id*. Under his contract with WCC, Dr. Sebby's job was limited to orthopedic consults. *Id*. He was not required or expected to be at the WCC infirmary on a daily basis. *Id*. He was available by phone if necessary. *Id*.

Dr. Sebby first saw Plaintiff on February 21, 2007 at the WCC infirmary. *Id*. at ¶ 6. Plaintiff had injured himself while playing basketball a few days earlier. *Id*. Dr. Sebby diagnosed Plaintiff with a complete tear of his left Achilles tendon and recommended surgery for the following day to repair the Achilles tendon. *Id*. At his pre-operative appointment, Dr. Sebby advised Plaintiff that the healing time would likely be lengthy, 6-12 months, that there could be issues with wound healing and possibly significant scarring. *Id*. Plaintiff confirms that Dr. Sebby informed him that the healing would take a long time. (Dkt. # 24, Exh. 1, Holley Dep. at 42:5-7). Plaintiff was agreeable to proceeding with the surgery. (Dkt. # 22, Exh. 2).

REPORT AND RECOMMENDATION - 2

1    On February 22, 2007, Dr. Sebby performed Plaintiff's Achilles tendon repair surgery at
2 Mason General Hospital. (Dkt. # 22 at ¶ 7).  Upon operating on Plaintiff, Dr. Sebby's initial diagnosis
3 was confirmed – Plaintiff had completely torn his Achilles tendon. *Id*. at Exh. 3.  The repair surgery
4 went well and was uneventful. *Id*.  Plaintiff was discharged to the hsopital recovery room after surgery
5 and later returned to the WCC infirmary. *Id*.
6    Dr. Sebby gave the infirmary staff at WCC and the Plaintiff orders to have his dressing
7 changed as needed. *Id*. at ¶ 8.  Plaintiff was to elevate the left leg and ice it to control swelling. *Id*.
8 He was prescribed pain medication, prophylactic antibiotics, was to be kept on bed rest, and was
9 instructed to remain on crutches and non weight bearing in the WCC infirmary for five days after
10 surgery. *Id*.
11    Approximately three weeks after surgery, it became apparent that Plaintiff's wound from the
12 Achilles surgery was having difficulty healing. *Id*. at ¶ 9.  Plaintiff's primary problem at this point was
13 a slow healing surgical site. *Id*.  The Achilles tendon itself was healing properly. *Id*.
14    A wound debridement was performed by Dr. Sebby on March 22, 2007 to remove dead tissue
15 and encourage new growth and healing of the wound. *Id*. at ¶ 9.  Plaintiff and WCC staff were
16 reminded to comply with Dr. Sebby's orders and to perform daily dressing changes. *Id*. at ¶ 10.
17 Plaintiff was given a new Cam walker boot. *Id*.  Dr. Sebby instructed WCC staff to schedule
18 outpatient physical therapy for special silver treatments to promote wound healing and granulation. *Id*.
19 Upon the Plaintiff's return to WCC, he was to remain in the infirmary. *Id*.
20    On April 2, 2007 Dr. Sebby discovered that Plaintiff had not yet been scheduled for outpatient
21 physical therapy for his wound as ordered. *Id*. at ¶ 11.  He then referred Plaintiff for a Venous Doppler
22 scan of his lower left leg to see if a blood clot could be contributing to poor circulation and his slow
23 healing wound. *Id*.  The scan was negative. *Id*.
24    When Plaintiff continued to experience slow healing of his wound, Dr. Sebby suggested a skin
25 graft procedure. *Id*. at ¶ 12.  Dr. Sebby performed the skin graft procedure on April 19, 2007. *Id*.  The
26 Plaintiff returned to the WCC infirmary. *Id*.  Dr. Sebby instructed him to continue using the Cam
27 walker boot at all times and to remain on crutches, partial weight bearing on his left leg. *Id*.  He was
28 REPORT AND RECOMMENDATION - 3

ordered to ice the wound and elevate whenever possible. *Id*. The Achilles tendon itself was intact and healing properly at this time. *Id*.

Dr. Sebby declares that the care of Plaintiff's ruptured Achilles tendon was appropriate, reasonable and that the method he used to repair the tendon is currently generally accepted in the field of orthopedic medicine in the State of Washington. *Id*. at ¶ 17. It is Dr. Sebby's professional opinion that he met the standard of care for an Orthopedist in the State of Washington. *Id*.

Plaintiff was aware that Dr. Sebby was not at WCC every day to monitor him and that WCC infirmary staff would have to monitor his progress and care. *Id*. at ¶ 9 and Dkt. # 24, Exh. 1, Holley Dep. at 40: 6-8. Dr. Sebby noted on May 21, 2007 that his orders to WCC staff and Plaintiff were not being followed:

> Again, this is a poorly-healing wound. The skin graft problem is what happens with these under the best of circumstances but this needs to be monitored better than it has been. I only see the guy once per week, I cannot be out there everyday. This is not feasible or appropriate. It should be brought to the attention of everybody that I was not called regarding the fact that this was going on. I do not understand the nursing issues.

(Dkt. # 22, Exh. 4, final paragraph)

**C.     Plaintiff's Transfer**

Plaintiff was transferred to Airway Heights Correction Center (AHCC) on May 9, 2007. (Dkt. # 24 at ¶ 3). Dr. Sebby did not request this transfer and did not know of the transfer until he was notified by WCC staff on May 10, 2007. (Dkt. # 22 at ¶ 14). Plaintiff's understanding of the reason for his transfer was that the DOC had a contract with Deaconess Wound Clinic and that he was sent to AHCC specifically to receive care from that clinic. (Dkt. # 24, Exh. 1, Holley Dep. at 66:11-21).

**D.     Plaintiff's Injury Has Healed**

Dr. Sebby and Dr. Eric Bowton, both orthopedists, confirm that from February 22, 2007, the Achilles tendon repair has functioned properly. (Dkt. 22 at ¶¶9, 12 and Exh. 5). As of December 14, 2007, Plaintiff's wound from his Achilles surgery had completely healed. (Dkt. # 24, Exhs. 2 and 3). Plaintiff also confirmed that his wound has healed. *Id*., Exh. 1, Holley Dep. at 45:5-11.

REPORT AND RECOMMENDATION - 4

On December 14, 2007, Dr. Todd Brookings of Deaconess Medical Center confirmed that Plaintiff's injury has healed:

1. Postoperative left Achilles wound, healed.
2. The patient may return to full activity with no restrictions.
3. The patient may transfer to work release.
4. The patient will be discharged from wound care.  Return for any new wounds.

(Dkt. # 24, Exh. 3).

**E.     Washington's Grievance System**

Defendants provide the Declaration of Devon Schrum, the Grievance Program Manager for the Office of Correctional Operations of the DOC, in Olympia, Washington.  (Dkt. # 23).  Mr. Schrum's official duties include responding to questions regarding the inmate grievance program statewide, reviewing grievances appealed to Level III and reporting to courts and DOC officials on the status of the grievance program.  *Id*. at ¶ 2.

The Washington Offender Grievance Program (OGP) has been in existence since the early 1980's and was implemented on a department-wide basis in 1985.  *Id*. at ¶ 3.   Under the OGP, an offender may file grievances challenging 1) DOC and institution policies, rules and procedures; 2) the application of such policies, rules and procedures; 3) the lack of policies, rules or procedures that directly affect the living conditions of the offender; 4) the actions of staff and volunteers; 5) the actions of other offenders; 6) retaliation by staff for filing grievances; and 7) physical plant conditions.  *Id*. at ¶ 4.  The OGP provides a range of remedies, including 1) restitution of properly, 2) correction of records; 3) administrative actions; 4) agreement by department officials to remedy an objectionable condition within a reasonable time; and 5) a change in a local or department policy or procedure.  *Id*. at 5.

DOC's grievance program has a multi-tiered approach to address offender grievances. *Id*.at ¶ 6.  Grievances regarding individuals at specific facilities must be sent to those facilities to allow staff to investigate those claims.  *Id*.  The first level is the initial grievance, considered Level I. *Id*. Grievances are filed at this level when an offender is challenging a policy or procedure. *Id*. After receiving the response from the institution's grievance coordinator, the offender can submit an

REPORT AND RECOMMENDATION - 5

1  appeal of that decision in a Level II grievance. *Id*. These grievances are investigated further and the
2  prison superintendent at each facility responds. *Id*. Finally, if an offender does not agree with the
3  superintendent's response, he or she may file a Level III grievance that is submitted to the
4  headquarters Grievance Coordinator in Olympia, Washington. *Id*. Level III grievances are the final
5  step. *Id*.

6  One of the options for an institution grievance coordinator in processing an original
7  complaint by an offender is to reject it, i.e., deem it "not grievable." *Id*. at ¶ 7. The Grievance
8  Program Manager will automatically review decisions of "ungrievability" and either concur with or
9  reverse those decisions as appropriate. *Id*. The DOC's grievance system is well known to inmates;
10  currently over 20,000 girevances are filed per year system wide. *Id*. at ¶ 10.

11  Eugene Holley DOC # 744544, is well aware of the grievance system in the DOC, as he has
12  filed approximately nine (9) grievances.

13  Plaintiff Holley filed a grievance regarding his claim that he received inadequate medical
14  treatment regarding his Achilles tendon rupture. *Id*. at ¶ 12. The grievance, Log ID # 0712622 was
15  returned to Plaintiff Holley with re-write instructions. *Id*. Plaintiff Holley did not resubmit the
16  grievance or file any appeal. *Id*. (with attached copy of DOC Grievance Summary listing
17  grievances filed by Plaintiff since May 2002 and Offender Complaint # 0712622).

18  **II.  STANDARD OF REVIEW**

19  Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that
20  there is no genuine issue as to any material fact and that the moving party is entitled to judgment as
21  a matter of law. Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56(c). In deciding whether
22  summary judgment should be granted, the court must view the record in the light most favorable to
23  the nonmoving party and indulge all inferences favorable to that party. Fed. R. Civ. P. 56(c) and (e).
24  When a summary judgment motion is supported as provided in Fed. R. Civ. P. 56, an adverse party
25  may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or
26  as otherwise provided in Fed. R. Civ. P. 56, must set forth specific facts showing there is a genuine
27  issue for trial. Fed. R. Civ. P. 56(e). If the nonmoving party does not so respond, summary
28  REPORT AND RECOMMENDATION - 6

judgment, if appropriate, shall be rendered against that party. *Id*.

The moving party must demonstrate the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude summary judgment. *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Electrical Serv., Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

## III. DISCUSSION

**A.     Failure to Exhaust**

The Prison Litigation Reform Act ("PLRA") requires exhaustion of administrative remedies prior to filing a complaint in federal court. The relevant portion of the PLRA states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

This requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002). Further, "[a]ll 'available' remedies" must be exhausted, "[e]ven when the prisoner seeks relief not available in grievance proceedings." *Id.* at 524. Inmates must exhaust prison grievance remedies before filing suit if the grievance system is capable of providing any relief or taking any action in response to the grievance, and must do so in a timely manner. *Booth v. Churner*, 531 U.S. 956, 121 S. Ct. 1819, 1825 (2001); *Woodford v. Ngo*. 548 U.S. 81, 126 S.Ct. 2378, 2386-87 (2006). The purpose of the exhaustion requirement is to "reduce the quantity and improve the quality of prisoner suits; . . . [and] afford corrections officials . . . opportunity to address complaints internally. . . . 42 U.S.C. § 1997e(a). *McKart v. United States*, 395 U.S. 185, 195 (1969).

REPORT AND RECOMMENDATION - 7

1      In deciding whether the PLRA exhaustion standard has been met, it must be remembered
2 that § 1997e(a) is an affirmative defense. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).
3 Defendants have the burden of raising and proving the absence of exhaustion. *Id*. There can be no
4 "absence of exhaustion" unless some relief remains "available," and a defendant must demonstrate
5 that pertinent relief remained available, whether at unexhausted levels of the grievance process or
6 through awaiting the results of the relief already granted as a result of that process. *Brown v.*
7 *Valoff*, 422 F.2d 926, 937 (9th Cir. 2005).

8      The undisputed record in this case reflects that Plaintiff Holley filed a grievance regarding
9 his claim that he received inadequate medical treatment of his Achilles tendon rupture. (Dkt. # 23 at
10 ¶ 12; attached DOC Grievance Summary and Grievance Log ID # 0712622). However, the
11 grievance was returned to Plaintiff Holley with re-write instructions and he did not resubmit the
12 grievance or file any appeal. Dkt. # 23 at ¶ 12.  Because Plaintiff did not pursue the administrative
13 remedies that were available to him and did not exhaust his remedies, this lawsuit has been
14 prematurely filed. Accordingly, the undersigned recommends that Plaintiff's claims against
15 Defendants Sebby and DOC should be dismissed.

16     In addition, a review of the undisputed evidence reflects that Plaintiff has failed to
17 demonstrate a constitutional violation sufficient to state a claim under 42 U.S.C. § 1983.

18 **B.     Plaintiff's Eighth Amendment Claim - Medical Treatment**

19     To state a claim under 42 U.S.C. § 1983, at least two elements must be met: (1) the
20 defendant must be a person acting under color of state law, (2) and his conduct must have deprived
21 the plaintiff of rights, privileges or immunities secured by the constitution or laws of the United
22 States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Implicit in the second element is a third element
23 of causation. *See Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 286-87, (1977); *Flores v.*
24 *Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), cert. denied, 449 U.S. 975 (1980). When a plaintiff
25 fails to allege or establish one of the three elements, his complaint must be dismissed. The Civil
26 Rights Act, 42 U.S.C. § 1983, is not merely a "font of tort law." *Parratt*, 451 U.S. at 532. That
27 plaintiff may have suffered harm, even if due to another's negligent conduct, does not in itself,
28 REPORT AND RECOMMENDATION - 8

necessarily demonstrate an abridgment of constitutional protections. *Davidson v. Cannon*, 474 U.S. 344 (1986).

Plaintiff does not identify a specific constitutional right or federal law violated by Defendants, but alleges that Defendants deprived him of a protected liberty right without due process of law. (Dkt. # 5, p. 5)[1]. His allegations illustrate, however, that his claim is one that is appropriately analyzed under the Eighth Amendment right against cruel and unusual punishment. Plaintiff alleges that after Defendant Sebbay performed the Achilles tendon repair surgery, his ankle did not heal properly and he was forced to undergo a second surgery to make the wound close. *Id*., p. 3. He did not receive the appropriate vitamins to help with healing. *Id*., p. 4. After Plaintiff had to undergo a third surgery to receive a skin graft and Defendant Sebbay failed to properly instruct the nurses as to the changing of his dressings and cleansing of his wound. *Id*. When Defendant Sebbay ordered the use of a heat lamp, nurses at WCC used a reading light with a 60 watt bulb instead of a heat lamp. *Id*. When he was examined by a Dr. Wu, there was no longer a skin graft on his wound and Dr. Wu ordered that he be transported to Deconess Hospital in Spokane, Washington to a wound specialist. *Id*.

Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference includes denial, delay or intentional interference with a prisoner's medical treatment. *Id*. at 104-5; *see also Broughton v. Cutter Labs*., 622 F.2d 458, 459-60 (9th Cir. 1980). To succeed on a deliberate indifference claim, an inmate must demonstrate that the prison official had a sufficiently culpable state of mind. *Famer v. Brennan*, 511 U.S. 825, 836 (1994). A determination of deliberate indifference involves an examination of two elements: the

---

[1]Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims. *Patel v. Penman*, 103 F.3d 868, 874 (9th Cir. 1996)(citations, internal quotations and brackets omitted); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 841-42 (1998). As noted above, Plaintiff's challenge to Defendants' conduct relating to the treatment of his Achilles tendon is more appropriately analyzed within the context of the protections of the Eighth Amendment.

REPORT AND RECOMMENDATION - 9

seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992).

First, the alleged deprivation must be, objectively, "sufficiently serious." *Farmer,* 511 U.S. at 834. A "serious medical need" exists if the failure to treat a prisoner's condition would result in further significant injury or the unnecessary and wanton infliction of pain contrary to contemporary standards of decency. *Helling v. McKinney*, 509 U.S. 25, 32-35 (1993); *McGuckin*, 974 F.2d at 1059. Second, the prison official must be deliberately indifferent to the risk of harm to the inmate. *Farmer*, 511 U.S. at 834.

An official is deliberately indifferent to a serious medical need if the official "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837. Deliberate indifference requires more culpability than ordinary lack of due care for a prisoner's health. *Id.* at 835. In assessing whether the official acted with deliberate indifference, a court's inquiry must focus on what the prison official actually perceived, not what the official should have known. *See Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). In other words an official must (1) be actually aware of facts from which an inference could be drawn that a substantial risk of harm exists, (2) actually draw the inference, but (3) nevertheless disregard the risk to the inmate's health. *Farmer*, 511 U.S. at 837-8.

For purposes of this summary judgment motion, the Court accepts Plaintiff's factual statements as true. Viewed in the light most favorable to Plaintiff, however, they fail to show how his damage or pain was proximately caused by any deliberate medical indifference of Defendant Sebby. Plaintiff has presented no competent medical evidence reflecting that Defendant Sebby failed to comply with the standard of care.

The undisputed evidence reflects that Defendant Sebby was responsible for ensuring that Plaintiff's Achilles tendon was repaired and that the repair was performed satisfactorily. The undisputed facts reflect that Dr. Sebby performed a successful Achilles tendon repair surgery, performed a wound debridement, ordered a Venous Doppler scan, a skin graft procedure, physical therapy and wound care to help Plaintiff's Achilles tendon heal. (Dkt. # 22). There is also evidence that Dr. Sebby did not see Plaintiff on a daily basis, that the daily monitoring of Plaintiff's care was

REPORT AND RECOMMENDATION - 10

in the hands of prison infirmary staff at WCC, and that Dr. Sebby had not been timely notified of healing issues post-surgery. *Id*., Exh. 7.  Plaintiff was aware that Dr. Sebby was not at WCC every day to monitor him and that WCC infirmary staff would have to monitor his progress and care. Dkt. # 22 at ¶ 9.  The evidence also reflects that as of December 14, 2007, Plaintiff's wound had completely healed.  (Dkt. # 24, Exh. 3).

After viewing all of the summary judgment evidence in the light most favorable to the Plaintiff, the undersigned concludes that Plaintiff's Eighth Amendment claim for the denial of access to medical care or treatment fails as a matter of law.   As noted above, Plaintiff has not responded to the motion for summary judgment and has provided no evidence beyond the bare allegations found in his Complaint.  Plaintiff has provided no evidence that any act or omission by Defendant Sebby violated his constitutional rights and, therefore, the undersigned recommends that the motion of Defendant Sebby be granted on Plaintiff's constitutional claims.

**C.     Medical Malpractice Claim**

Defendant Sebby argues that Plaintiff has plead a medical malpractice claim which must be supported by expert testimony.  In a medical malpractice action arising from medical care rendered in the state of Washington, Washington law applies and the standard of care can only be proven by expert testimony.  *See, e.g., Hutchinson v. United States*, 838 F.2d 390 (9th Cir. 1987).

In Washington, RCW 7.70 governs all civil actions for injuries resulting from health care provided after June 25, 1976. An action for damages for injury occurring as a result of health care is controlled *exclusively* by RCW 7.70.030, regardless of how the action is characterized. *Branom v. State*, 94 Wn. App. 964, 974 P.2d 335 (1999), *review denied*, 138 Wn.2d 1023, 989 P.2d 1136. Thus, to the extent that Plaintiff is making claims against Dr. Sebby beyond those found in RCW 7.70.030, such claims are barred as a matter of law.   RCW 7.70.040 identifies the elements of proof required in a medical malpractice action:

REPORT AND RECOMMENDATION - 11

(1) The health care provider failed to exercise that degree of skill, care, and learning expected of a reasonably prudent health care provider in the profession or the class to which he belongs, in the state of Washington, acting in the same or similar circumstances;

(2) Such failure was the proximate cause of the injury complained of.

RCW 7.70.040.

Plaintiff must prove that Dr. Sebby was negligent in that the care he provided fell below the expected standard of care of an emergency medicine physician, practicing in the same or similar circumstances, in the treatment provided to Mr. Holley and that such negligence proximately caused his injuries. In all but the most extraordinary situations, a claimant must submit competent, expert testimony to meet his or her burden of proof in a medical malpractice action. *Guile*, 70 Wn.App. at 25 (citing *Harris v. Groth*, 99 Wn.2d 438, 449, 663 P.2d 113 (1983)). The claimant must establish the standard of care through the testimony of the professional equals of the defendant doctor. *Young*, *supra*, 112 Wn.2d at 227-230; *Swanson v. Brigham*, 18 Wn. App. 647, 651, 571 P.2d 217 (1977). A health care provider's conduct is to be measured against the standard of care of a reasonably prudent practitioner possessing the degree of skill, care and learning possessed by other members of the same area of specialty in the State of Washington. *Harris*, 99 Wn.2d 438 (construing RCW 7.70.010, *et seq.*).

As noted above, Plaintiff has not responded to Dr. Sebby's motion for summary judgment and has presented no expert testimony to support his claims that Defendant Sebby did not provide proper medical care.

Therefore, the undersigned recommends that the Plaintiff's claims of malpractice against Defendant Sebby be dismissed.

### IV.  CONCLUSION

For the reasons stated above the Court should **GRANT** the motion for summary judgment of Defendants Sebby and DOC (Dkt. # 21 and 25). A proposed order accompanies this Report and Recommendation.

REPORT AND RECOMMENDATION - 12

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk of the Court is directed to set the matter for consideration on **May 2, 2009**, as noted in the caption.

DATED this  14th  day of April, 2008.

*/s/ Karen L. Strombom*
Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13